**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

DAMIAN FLOREZ-RAMIREZ,

     Plaintiff,

v.

JACQUES JONES, et al.,

     Defendants.

Case No. 2:24-cv-02335-MSN-atc
JURY DEMAND

---

**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS'
MOTION TO DISMISS, DIRECTING PLAINTIFF TO IDENTIFY UNKNOWN
"LIEUTENANT," AND DISMISSING CLAIMS AGAINST ASHLYN CUNNINGHAM**

---

Before the Court is the Motion to Dismiss of Defendants Jacques Jones, Tracy Williams, Carlus Cleaves, Kendall Davis, Tamiko Swain, and Shelby County, Tennessee, made under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 15, "Motion.")  Defendants move to dismiss Plaintiff Damian Florez-Ramirez's Complaint alleging civil rights violations by the above officers of the Shelby County Sheriff's Office ("SCSO") in their individual capacities, civil rights violations by Shelby County, and state-law claims of negligent hiring, retention, and training against Shelby County.  (ECF No. 1, "Pending Complaint.")  For the reasons stated below, Defendants' Motion is **DENIED** in part and **GRANTED** in part.

**BACKGROUND**

**I.    The Incident on May 20, 2023**

This action arises from an incident that occurred on May 20, 2023, concerning Plaintiff, a pre-trial detainee, and several corrections officers at the Shelby County Criminal Justice Center ("Shelby County Jail") in Memphis, Tennessee.  (ECF No. 21 at PageID 128.)  At approximately

1:30 p.m., Sergeant Kendall Davis conducted a security check on the fourth floor where Plaintiff was housed.  (ECF No. 15-1 at PageID 95.)  After an altercation in which Plaintiff threw a plastic chair at Sergeant Davis and attempted to strike him, officers handcuffed Plaintiff and escorted him to the second-floor medical room.  (*Id.* at PageID 96.)  The officers sprayed Plaintiff with Freeze +P (a kind of pepper spray), but Plaintiff had no visible injuries when he entered the exam room, Room 213.  (ECF No. 1 at PageID 5.)  Footage from the security camera in the hall ("the camera") shows two members of the Detention Response Team ("DRT"), Reginald Wilkins and Odell Underwood, enter Room 213 at 1:54 p.m.  (*Id.* at PageID 1 & 5.)  There was no camera in Room 213.  (*Id.* at PageID 5.)  Plaintiff alleges the officers threatened him several times, then exited the room to see a higher-ranking officer in the next room to get the "say-so" to beat Plaintiff.  (ECF No. 15-1 at PageID 96.)  Plaintiff later learned it was Sergeant Davis in the next room, Room 212, being treated for a hand injury.  (ECF No. 1 at PageID 6.)

While the officers were gone, Nurse Michaela Armstrong entered Room 213 and treated Plaintiff, whose hands were still in cuffs.  (*Id.* at PageID 5.)  At this time, the camera captured Wilkins and Underwood standing in the hallway speaking with other corrections officers, including Sergeant Tamiko Swain and an unknown Lieutenant.  (*Id.*)  At 1:56 p.m., Nurse Armstrong cleared Plaintiff to return to the fourth floor.  (*Id.*)  However, instead of escorting Plaintiff back, Wilkins removed his wristwatch, handed it to Sergeant Swain, and went back into Room 213 with Plaintiff alone.  (*Id.* at PageID 6.)  Plaintiff alleges Wilkins called him "bitch" and said he was about to learn "what happens in here" to inmates who injure guards.  (*Id.*)

During this time, Underwood continued talking with the other officers.  (*Id.*)  Plaintiff alleges the conversation centered around Sergeant Davis's hand injury and "how Florez-Ramirez ought to be punished."  (*Id.* at PageID 6.)  Wilkins came out and Plaintiff heard him say to someone

2

in Room 212, "We got this, Sarge." (*Id.*)  At 1:58 p.m., Wilkins and Underwood reentered Room 213. (*Id.* at PageID 7.)  The camera shows the Lieutenant "direct[ing] everyone else to disperse," then standing in front of Room 213 with his "arms crossed, looking up and down the now-empty hallway." (*Id.*)  According to the Pending Complaint, Wilkins and Underwood proceeded to knock Plaintiff to the floor and "repeatedly kick[] [him] in the face and torso while shouting, 'Get up, bitch!'" (*Id.* at PageID 7.)  Over the next few minutes, the officers struck Plaintiff "more than ten times in the head with their fists, handcuffs (used as brass knuckles), and metal Freeze +P canisters. The blows from the metal implements left permanent divots in the bony parts of [Plaintiff's] forehead and left and right orbitals." (*Id.* at PageID 8.)  Plaintiff alleges the attack was loud enough for officers and medical staff in the hall and nearby rooms to hear.  (*Id.*)

A few minutes later, the officers emerged from Plaintiff's room and asked Nurse Ashlyn Cunningham to "finish him up." (*Id.*)  When Nurse Cunningham entered the room, "chemical agent hung so thickly in the air that she could not breathe and had to move Florez-Ramirez to Room 212, now empty," which she did at 2:04 p.m.  (*Id.*)  By this time, Plaintiff was covered in blood and his face was swollen.  (*Id.*)  According to the Pending Complaint, Plaintiff told Nurse Cunningham about the attack and asked her to take pictures to document his injuries, but she refused.  (*Id.*)  At 2:12 p.m., Underwood and Wilkins took Plaintiff to an isolation cell in the administrative-segregation ("ad-seg") unit, where Plaintiff alleges that they beat him again in the changing room.  (*Id.* at PageID 9.)  Several prison guards later told investigators that Plaintiff had swelling, blood, and lacerations on his face and was "in and out" of consciousness.  (*Id.*)  At 2:19 p.m., the DRT officers dragged Plaintiff into an "ad-seg cage," where he fully lost consciousness. (*Id.* at PageID 10.)  A nurse called for an ambulance and Plaintiff was rushed to Regional One, where he was treated for a concussion, facial lacerations, and blunt-force trauma to the head. (*Id.*)

3

Over the next few weeks, Plaintiff filed several inmate grievances, which were all rejected. (*Id.* at PageID 11.) He was sanctioned to sixty days detention by the Disciplinary Board and was not permitted to talk about the DRT assault on him during the disciplinary proceedings. (*Id.*) SCSO detectives later conducted an investigation on the incident and submitted a report to the Shelby County District Attorney's ("DA's") office, which charged Wilkins and Underwood with felony official oppression, felony official misconduct, and criminal assault. (*Id.* at PageID 12.) At the time the Pending Complaint was filed, criminal proceedings were ongoing. (*Id.*)

## II.      Plaintiff's Initial *Pro Se* Complaint

Plaintiff initially filed a *pro se* lawsuit on September 15, 2023, alleging civil rights violations under 42 U.S.C. § 1983 against Reginald Wilkins, Odell Underwood, Kendall Davis, and Melanie Moore (an officer who was present at the fourth-floor security check on May 20, 2023). (*Florez-Ramirez v. Wilkins et al.*, Case No. 2:23-cv-02587, ECF No. 1, "*Pro Se* Complaint.") U.S. District Court Judge Mays granted Plaintiff leave to proceed *in forma pauperis*. (*Id.* at ECF No. 4.) Because Plaintiff did not state whether he was suing the officers in their individual or official capacity, the Court presumed the latter and added Shelby County, Tennessee, as a defendant. (*Id.* at ECF No. 6, "August 6 Order.") However, because Plaintiff did not state a claim for relief against Wilkins, Underwood, Davis, or Moore in their official capacities, and did not allege a deprivation of a constitutional right due to a policy or custom of Shelby County, the Court dismissed the suit. (*Id.* at PageID 26.) All claims were dismissed without prejudice, with leave to amend the *Pro Se* Complaint within twenty-one days of the order. (*Id.* at PageID 27.) Unfortunately, Defendant did not receive a copy of the August 6 Order until it was forwarded to him approximately forty-eight days later because he had not filed a change of address after his release from the Shelby County Jail. (*Id.* at ECF No. 9 at PageID 45.)

4

On September 25, 2024, Plaintiff filed a motion asking the Court permission to amend his *Pro Se* Complaint and informing the Court that he had now acquired counsel. (*Id.* at ECF No. 8, "September 25 Motion.") On October 9, the Court granted the motion and directed the clerk to mail a copy to Plaintiff's Counsel, ordering Counsel to make an appearance within twenty-one days and "address the relation of this case to Case No. 24-2355 [sic]." (*Id.* at ECF No. 9, "October 9 Order.") Counsel made an appearance on October 30, 2024. (*Id.* at ECF Nos. 10, 11 & 13.) One day later, Plaintiff, through Counsel, asked the Court to dismiss the suit, which the Court permitted (*Id.* at ECF Nos. 15, 16.) The Court did not say whether the suit was dismissed with or without prejudice, thus, under Federal Rule of Civil Procedure 41(a)(2), the dismissal is considered to be without prejudice.

### III. The Pending Complaint

After Plaintiff filed his initial complaint, but before the Court dismissed it, Plaintiff asked new counsel, Apperson Crump ("Counsel"), to represent him in a civil rights action, but did not mention that he had already filed a *pro se* complaint. (ECF No. 21 at PageID 129.) Counsel obtained information from the DA's files regarding the incident on May 20, 2023, and filed a complaint on May 20, 2024. (ECF No. 1.) Counsel did not learn about Plaintiff's *Pro Se* Complaint until after Judge Mays' August 6 Order and after Plaintiff's September 25 Motion. (ECF No. 21 at PageID 136.) By the time Counsel received a copy of Judge Mays' October 9 Order and made an appearance, Defendants for the Pending Complaint had already filed their Motion to Dismiss. (*Id.*) Counsel acknowledged that the Pending Complaint appears to "arise out of the same transaction or occurrence" as the *Pro Se* Complaint, but "names additional defendants and additional theories of liability." (Case No. 2:23-cv-02587, ECF No. 12 at PageID 51.) As previously noted, the Court granted Plaintiff's motion to dismiss regarding the *Pro Se* Complaint

and pursuant to Federal Rule of Civil Procedure 41, leaving the Pending Complaint as the sole cause of action relating to the May 20, 2023, incident.

The Pending Complaint alleges civil rights violations under 42 U.S.C. § 1983 as well as Tennessee's Governmental Tort Liability Act ("GTLA"), bringing the following counts:

Federal Causes of Action
**Count 1:** § 1983 Failure to Intervene – against "the Lieutenant" (individual capacity)
**Count 2:** § 1983 Failure to Intervene – against Sergeant Davis (individual capacity)
**Count 3:** § 1983 Failure to Intervene – against Sergeant Swain (individual capacity)
**Count 4:** § 1983 Failure to Intervene – against Nurse Cunningham (individual capacity)
**Count 5:** § 1983 Custom of Tolerance – against Shelby County (*Monell* claim)
**Count 6:** § 1983 Failure to Train – against Shelby County (*Monell* claim)

State Causes of Action
**Count 7:** GTLA Negligent Hiring & Retention – against Shelby County
**Count 8:** GTLA Negligent Training – against Shelby County

(ECF No. 1 at PageID 18–26.)  On October 11, 2024, Defendants moved to dismiss all claims on the basis of duplicative litigation, qualified immunity, and the civil rights exceptions to the GTLA. (ECF No. 15).  On November 27, 2024, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss (ECF No. 24, "Response"), to which Defendant replied on December 27, 2024 (ECF No. 25, "Reply").

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court accepts the plaintiff's "plausible factual allegations as true and draw[s] all reasonable inferences" in the plaintiff's favor.  *Marchek v. United Servs. Auto. Ass'n*, 118 F.4th 830, 833 (6th Cir. 2024); *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020).  The sufficiency of factual allegations turns on whether the pleading "state[s] a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face if "the plaintiff

6

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint need not contain detailed factual allegations; however, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 556). In other words, "a plaintiff must allege facts that, when taken as true, state a claim to relief that is plausible on its face and that rises above the speculative level." *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024) (cleaned up). If a court decides, in light of its judicial experience and common sense, that the claim is not plausible, the case may be dismissed at the pleading stage. *Iqbal*, 556 U.S. at 679.

"A district court is not permitted to consider matters beyond the complaint" when considering a motion to dismiss under Rule 12(b)(6). *Mediacom Se. L.L.C. v. BellSouth Telcoms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012). If a court considers material outside of the pleadings, the motion to dismiss must be converted into a motion for summary judgment under Federal Rule of Civil Procedure 56, "and all parties must be given a reasonable opportunity to present all material pertinent to the motion." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). A court may, however, consider exhibits attached to the petition as well as exhibits attached to the motion to dismiss "so long as they are referred to in the [c]omplaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

**<u>DISCUSSION</u>**

Defendants ask the Court to dismiss Plaintiff's Pending Complaint because it constitutes "duplicative" litigation, Defendants are entitled to qualified immunity, and the state-law claims are barred by the civil rights exception to the GTLA. (ECF No. 15 at PageID 100, 104, & 111.)

7

Plaintiff argues the federal-law claims should proceed because the Pending Complaint is significantly different from the original *Pro Se* Complaint, and because Plaintiff makes plausible § 1983 claims against Defendants. (ECF No. 21 at PageID 141 & 146.) However, Plaintiff concedes that the state-law claims must be dismissed under the GTLA. (*Id.* at PageID 128.)

**I. Duplicative Litigation and Claim Preclusion Doctrines**

According to Defendants, the Pending Complaint constitutes duplicative litigation because it arises out of the same incident and names some of the same Defendants as the *Pro Se* Complaint. (ECF No. 15-1 at PageID 97 & 101.) Therefore, Defendants argue, its claims must be dismissed under the Prison Litigation Reform Act of 1995 ("PLRA") and claim preclusion doctrines. Under the PLRA, district courts must screen civil cases filed by "prisoners" and dismiss claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted." 28 U.S.C. § 1915A. This reflects the goal of the PLRA to prevent meritless prisoner claims from flooding the courts and to "reduce the intervention of federal courts into the management of the nation's prison systems." *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). When an inmate files a second suit regarding the same incident, the Court must dismiss the second action as "malicious." *See, e.g.*, *Swann v. Dist. Att'y of Kingsport*, No. 1:22-CV-25, 2022 WL 370232, at *2 (E.D. Tenn. Feb. 7, 2022). Claims are "malicious" when they "merely repeat[] pending or previously litigated claims." *Brown v. Tribble*, No. 1:22-CV-419, 2022 WL 3643734, at *3 (W.D. Mich. Aug. 24, 2022) (collecting cases). In other words, district courts dismiss complaints where the "claims, parties, and available relief do not significantly differ from an earlier-filed action." *Id.* at *4. Courts also consider whether the second action "evidence[s] an intent to vex defendants or abuse the judicial process by relitigating claims decided in prior cases." *Rankin v. Brian Lavan & Assocs., P.C.*, No. 23-1949, 2024 WL 4675282, at *2 (6th Cir. July 3, 2024) (quoting *Washington v. Reno*, No. 95-

5062, 1995 WL 376742, at *1 (6th Cir. June 22, 1995)).

Here, Plaintiff filed a *pro se* complaint on September 15, 2023, and then a second complaint, through counsel, on May 20, 2024. Both actions clearly arise from the same incident on May 20, 2023, which occurred between Plaintiff and corrections officers at the Shelby County Jail. Both allege civil rights violations under § 1983 and therefore have the same possible relief. However, the complaints differ significantly in their claims and parties.

For instance, the *Pro Se* Complaint focuses on Wilkins' and Underwood's actions inside the medical exam room. Plaintiff also describes his altercation with Sergeant Davis before being escorted to the medical clinic and the nursing staff's failure to treat him after the alleged beating. (Case No. 2:23-cv-02587, ECF No. 1 at PageID 2–3; ECF No. 1-1 at PageID 4.)[1] Judge Mays liberally construed Plaintiff's claims as "(1) excessive use of force, (2) failure to protect, and (3) deprivation of medical care." (Case No. 2:23-cv-02587, ECF No. 6 at PageID 21.); *see also Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004) ("The pleadings of pro se petitioners are held to less stringent standards than those prepared by attorneys, and are liberally construed . . . .") These claims were dismissed because Plaintiff failed to state whether he was suing the officers in their official or individual capacity; therefore, the Court presumed Plaintiff was suing them in their official capacity, added Shelby County as a party, and treated the claims as *Monell* claims. (Case No. 2:23-cv-02587, ECF No. 6 at PageID 25–26.) Since Plaintiff did not plead sufficient facts to establish a *Monell* claim, the Court dismissed the *Pro Se* Complaint without prejudice. (*Id.*)[2]

---

[1] In his hand-written complaint, Plaintiff alleges, "I was refused Medical Attention i never seen a Nurse, I Kept screaming for help from the Nurses to take pictures. Every Nurse walk away and had No dealings with my situation." (Case No. 2:23-cv-02587, ECF No. 1-1 at PageID 4.)

[2] As Defendants point out, Plaintiff had leave to amend within twenty-one days. (ECF No. 15 at PageID 96–97.) However, Plaintiff failed to update his address with the Court and did not receive Judge Mays' order for forty-eight days, at which point Plaintiff—unbeknownst to his

In contrast, the Pending Complaint focuses on Defendants' actions outside of the medical exam room. Plaintiff alleges Sergeant Davis, Sergeant Swain, and "the Lieutenant" were all near Room 213 during the alleged beating but did nothing to intervene, despite outranking Wilkins and Underwood. (Case No. 2:24-cv-02335, ECF No. 21 at PageID 132–33.) The Pending Complaint includes facts unknown to the Defendant at the time he made his *Pro Se* Complaint. (*Id.* at PageID 131.) Furthermore, this second action alleges twenty-three instances of excessive force used by SCSO correctional officers against inmates between 2018 and 2023, and alleges that Shelby County adopted a "Duty to Intervene" policy in June 2020, but did not train jail staff in how to implement the policy and did not enforce it. (ECF No. 1 at PageID 12–18.) As Plaintiff argues, these claims go "well beyond" those of the *Pro Se* Complaint. (ECF No. 21 at PageID 141.)

Additionally, the *Pro Se* Complaint lists four officers as defendants: Wilkins, Underwood, Davis, and Moore. (Case No. 2:23-cv-02587, ECF No. 1 at PageID 2.) Judge Mays construed Plaintiff's *Pro Se* Complaint as suing the officers in their official capacity, thereby adding Shelby County as a defendant. (*Id.*, ECF No. 6 at PageID 25.) The *Pro Se* Complaint makes factual allegations about Sergeant Davis' conduct during the fourth-floor altercation as well as Wilkins' and Underwood's conduct in the medical clinic and the ad-seg unit. The *Pro Se* Complaint makes no specific allegations against Officer Moore, beyond mentioning that she was present during the fourth-floor security check. (*Id.*, ECF No. 1 at PageID 2.)

In contrast, the Pending Complaint brings claims against three officers (Kendall Davis, Tamiko Swain, and "the Lieutenant," likely one of three lieutenants present at the Shelby County

---

attorneys—asked for leave to amend. (ECF No. 21 at PageID 136.) By the time Plaintiff's attorneys learned about the *Pro Se* Complaint, the Defendants for the Pending Complaint had already filed a Motion to Dismiss. (*Id.*) Therefore, Plaintiff opted to continue with the Pending Complaint and asked the Court to dismiss the *Pro Se* Complaint pursuant to Federal Rule of Civil Procedure 41, which the Court granted. (*Id.* at PageID 137.)

Jail on May 20, 2023—Jacques Jones, Tracy Williams, and Carlus Cleaves), one nurse (Ashlyn Cunningham), and Shelby County.  The Pending Complaint does not list Wilkins, Underwood, or Moore as defendants, and it specifically sues Davis in his individual rather than official capacity.[3] Therefore, the Pending Complaint and *Pro Se* Complaint share only one Defendant in common: the County, which Plaintiff did not name in the original complaint and was added later as a matter of procedure.[4]

Considering the significant differences between the two complaints, the Court finds it unlikely that Plaintiff filed the second complaint with the intent to "vex defendants or abuse the judicial process."  *Rankin*, No. 23-1949, 2024 WL 4675282, at *2.  Moreover, the Pending Complaint does more than "merely repeat[] pending or previously litigated claims."  *Brown*, No. 1:22-CV-419, 2022 WL 3643734, at *3.  Therefore, the Court finds it is not duplicative or malicious under the PLRA.

Lastly, Defendants argue even if Plaintiff's Pending Complaint is not malicious, it is still precluded by the doctrines of duplicative litigation and claim-splitting.  (ECF No. 15-1 at PageID

---

[3]  Because "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity," a suit against a state actor in his or her individual capacity does not duplicate official-capacity claims.  *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 F. App'x 621, 635 (6th Cir. 2012) (quoting *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994)).

[4]  Defendant argues *res judicata* bars suit against Defendants Jones, Williams, Cleaves, and Swain, even though they were not named in Plaintiff's *Pro Se* Complaint, because as employees they are "in privity" with the County.  (ECF No. 15-1 at PageID 104.)  However, even if Plaintiff's first suit had received a final judgment, *res judicata* would only bar suit against these Defendants in their official capacity.  *See McCoy v. Michigan*, 369 F. App'x 646, 650 (6th Cir. 2010) (holding, where plaintiff had previously sued the employer county, *res judicata* only barred a second suit against employee officers in their official capacity, not in their individual capacity).  Furthermore, the privity theory also fails because individual Defendants do not satisfy the conditions of privity for the purposes of *res judicata*.  (ECF No. 21 at PageID 146.)  As Plaintiff points out, they are not "successors in interest to the County," they did not "control the litigation," and "nothing suggests the County adequately represented their interests in the prior action."  (*Id.* (citing *Mitchell v. Chapman*, 343 F.3d 811, 823 (6th Cir. 2003).)

11

102–03.)  Both doctrines stem from the U.S. Supreme Court's instruction that "[a]s between federal district courts . . . the general principle is to avoid duplicative litigation." *Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  District courts have the authority to "stay or dismiss a suit that is duplicative of another federal court suit."  *Id.* (citing *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)).  Courts may also dismiss a second action for claim-splitting even if the first action has yet to receive a final judgment.  *Id.* (quoting *Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011) ("[T]he test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit.")).

Here, Plaintiff's second claim would be precluded if the *Pro Se* Complaint had been litigated.  However, since the Court has already dismissed it without prejudice, the issue of claim preclusion is now moot.[5]

Accordingly, Defendants' Motion to Dismiss (ECF No. 15) is **DENIED** as to Defendants' claims that the Pending Complaint is malicious, duplicative, or barred by claim-splitting.[6]

## II. Qualified Immunity

Defendants also claim individual Defendants are entitled to qualified immunity as to the §

---

[5] Although the *Pro Se* Complaint was still pending at the time of Defendants' Motion, Judge Mays dismissed the action without prejudice shortly thereafter.  (Case No. 2:23-cv-02587, ECF No. 16 & 17.)  Defendants point out that Plaintiff had the option to amend his original complaint.  (*Id.*, ECF No. 15-1 at PageID 96.)  However, by the time Plaintiff received notice of the Court's leave to amend in the August 6 and October 9 Orders, circumstances had changed: (1) Plaintiff had already filed the second complaint with significantly different claims and parties, (2) the statute of limitations (one year under Tennessee law) barred Plaintiff from adding defendants to his original complaint, and (3) none of the defendants named in the first suit had responded to the original complaint.  Therefore, the Court finds it equitable to allow the Pending Complaint to proceed as the sole remaining action, even though it was filed second.

[6] Since Defendants' Motion does not challenge the *Monell* claims against Shelby County under any other theory, all federal claims against the County survive.

1983 failure to intervene claims because Plaintiff has failed to show Defendants knew of the alleged excessive force or had the opportunity to intervene. (ECF No. 15-1 at PageID 104).

To bring a claim under 42 U.S.C. § 1983, plaintiffs must show a government official acting under the color of state law deprived them of a constitutional right. *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). The U.S. Constitution protects those in state custody from the use of excessive force. *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008). Pre-trial detainees may bring excessive force claims under the Fourteenth Amendment Due Process Clause, which courts analyze using an objective deliberate indifference standard. *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015).[7] In other words, plaintiffs must show that the officer's use of force was objectively unreasonable. *Id.* at 397. Factors to consider are "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Pre-trial detainees may also sue officers who fail to intervene in the use of excessive force. *Chaney-Snell v. Young*, 98 F.4th 699, 721 (6th Cir. 2024). To assert a failure to intervene claim, the plaintiff must allege "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the

---

[7] Traditionally, all prisoners brought excessive force claims under the Eighth Amendment's prohibition against cruel and unusual punishment. *Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021). Courts analyzed these claims using a two-prong deliberate indifference standard where plaintiffs had to show the officer's use of force was both *subjectively* and *objectively* unreasonable. *Id.* However, in *Kingsley*, the U.S. Supreme Court held that the Eighth Amendment is inapplicable to pre-trial detainees who, due to the presumption of innocence, cannot be punished. 576 U.S. at 400. Therefore, excessive force claims by pre-trial detainees are more appropriately brought under the Fourteenth Amendment Due Process Clause using an objective deliberate indifference standard. *Id.* at 396–97.

harm from occurring." *Groth v. City of Birmingham*, 761 F. Supp. 3d 1031, 1053–54 (E.D. Mich. 2025) (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)). Courts also consider whether the officer was deliberately indifferent to the plaintiff's health and safety. *Westmoreland v. Butler Cnty., Ky.*, 29 F.4th 721, 726 (6th Cir. 2022).[8] However, "officers cannot be held liable under this theory if they do not have 'a realistic opportunity to intervene and prevent harm.'" *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013) (quoting *Ontha v. Rutherford Cnty., Tenn.*, 222 F. App'x 498, 507 (6th Cir. 2007). Furthermore, an officer's "mere presence during [an] altercation without a showing of direct responsibility cannot subject them to liability." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (citing *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010)).

Qualified immunity shields government officials performing discretionary functions from civil liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The purpose of qualified immunity is to "hold public officials accountable when they exercise power irresponsibly" while also shielding officials from "harassment, distraction, and liability when they perform their duties reasonably." *Peatross*, 818 F.3d at 240 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). To determine whether a government official is entitled to qualified immunity, a court may conduct a two-step inquiry: first, viewing the facts in the light most favorable to the plaintiff, have the plaintiff's allegations shown the officer's conduct violated a constitutional right? *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010). Second, was

---

[8] *See also Brawner*, 14 F.4th at 596–97 (citing *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)) (holding that deliberate indifference in this context goes beyond "mere negligence" and is more like acting recklessly "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known")

14

the right clearly established at the time of the alleged violation? *Id.* Courts may analyze either prong of the analysis first. *Pearson*, 555 U.S. at 236. The plaintiff has the burden of showing "that a clearly established right has been violated and that the official's conduct caused that violation." *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 357 (6th Cir. 2013).

At the pleading stage, dismissal on qualified immunity grounds is generally disfavored. *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020). The Sixth Circuit has consistently held that "[i]t is preferable to resolve the 'threshold question' of a government officer's entitlement to qualified immunity at 'summary judgment[,] . . . not dismissal under Rule 12.'" *Id.* (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)). This is because "development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *Id.* (quoting *Singleton v. Kentucky*, 843 F.3d 238, 242 (6th Cir. 2016)); *see also Kulpa for Est. of Kulpa v. Cantea*, 708 F. App'x 846, 854 (6th Cir. 2017) ("We have repeatedly denied qualified immunity when officers observe the use of excessive force yet fail to intercede." (citations omitted) (collecting cases)).

Prior to addressing the qualified immunity inquiry, the Court will first consider whether Plaintiff has pleaded sufficient facts to show that excessive force was used and Defendants failed to intervene. Plaintiff alleges Officers Wilkins and Underwood entered the medical exam room several times, made verbal threats, and struck him "more than ten times in the head with their fists, handcuffs (used as brass knuckles), and metal Freeze +P canisters"—all while Plaintiff had his hands cuffed behind his back and was not resisting the officers. (ECF No. 1 at PageID 6–8.) These allegations are more than sufficient to establish a plausible claim of excessive force. The question, then, is whether individual Defendants failed to intervene—specifically, did they (1) know about the excessive force and (2) have the opportunity and means to prevent it. *Groth*, 761 F. Supp. 3d

15

at 1053–54.  The Court will address these questions in the context of the qualified immunity inquiry for each individual Defendant.

Under the first prong of the qualified immunity inquiry, the Court asks whether the alleged facts show Sergeant Davis violated Plaintiff's right against excessive force by failing to intervene. Specifically, the Court asks whether Davis (1) knew about the excessive force, (2) had the opportunity and means to prevent it, but (3) did not take action to prevent it.  *Groth*, 761 F. Supp. 3d at 1053–54; *Essex*, 518 Fed.Appx. at 357.

Plaintiff alleges that, after the altercation on the fourth floor, Davis was being treated for a hand injury in Room 212, the medical exam room next to the one Plaintiff occupied at the time of the alleged beating.  (ECF No. 1 at PageID 6–7.)  According to Plaintiff, Davis's injury was the reason Wilkins and Underwood wanted to teach Plaintiff a "lesson."  (*Id.*)  Footage from the security camera displays Wilkins entering Room 213 for the second time at 1:56 p.m., when he allegedly called Plaintiff "bitch" and said he was about to learn "what happens in here" to inmates who injure guards.  (*Id.* at PageID 6.)  In his *Pro Se* Complaint, Plaintiff did not know who was in the next room, but he alleged Wilkins and Underwood left the room to "get the say so" from a higher-ranking officer.  (ECF No. 15-1 at PageID 96.)  Plaintiff also heard Wilkins state, "We got this, Sarge," before entering Room 213 for a third time at 1:58 p.m.  (ECF No. 1 at PageID 6–7.) According to the Pending Complaint, Wilkins and Underwood repeatedly hit and kicked Plaintiff, who was still hand-cuffed behind his back, all "well within earshot of the Lieutenant in the hallway and the other staff in Room 212."  (*Id.* at PageID 7.)  These facts support a plausible claim that Davis knew about Wilkins's and Underwood's use of excessive force, both before it happened and while it was happening.

Defendants argue that even if Davis knew about the excessive force, he did not have a

16

"realistic opportunity" to intervene because "the assault was brief" and "Sergeant Davis was preoccupied with his own injury during that time." (ECF No. 15-1 at PageID 109.) However, this argument has little merit because Davis was warned of Wilkins' and Underwoods' plans ("We got this, Sarge") and, as their superior officer, had the opportunity to order them to stand down. (ECF No. 21 at PageID 151.) This holds true even if he was receiving treatment for a minor injury. Therefore, since Plaintiff has alleged sufficient facts to show Davis knew about the excessive force, had the opportunity to prevent it, but did not take action to prevent it, the Court finds the first prong of the qualified immunity inquiry is met.

The second prong of the qualified immunity inquiry—whether the constitutional right was "clearly established" at the time of the alleged violation—is also met. The Sixth Circuit has clearly established that those in state custody, whether pre-trial detainees or convicted inmates, have a constitutional right against excessive force, and that officers are liable for failure to intervene. *See, e.g., Chaney-Snell*, 98 F.4th at 721 (6th Cir. 2024) (citing *Bruner v. Dunaway*, 684 F.2d 422, 425–426 (1982)) ("[A]n officer who fails to intervene to prevent another officer's excessive force can face liability for that force under § 1983."); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) ("[A] corrections officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating.")

Defendants argue that Davis could not have reasonably known that by "failing to cease receiving medical treatment for his own injuries, he would be violating Plaintiff's constitutional rights." (ECF No. 15-1 at PageID 108–110.) Defendants cite Sixth Circuit case law where courts did not hold officers liable for failing to intervene when they were preoccupied with other duties. (*Id.* at PageID 108 (citing *Chaney-Snell*, 98 F.4th at 723; *Wright v. City of Euclid*, 962 F.3d 852, 972 (6th Cir. 2020).) However, these cases granted immunity to officers who were actively

17

detaining the plaintiff or another individual, not receiving medical treatment. (*Id.*) As Plaintiff argues, just because Davis was receiving medical treatment did not give him a "pass" to ignore what was occurring in the next room. (ECF No. 21 at PageID 150.) As long as his injury was not severe, and his treatment not overwhelming, he still had the ability to order Wilkins and Underwood to stand down. (*Id.* at PageID 151.) Therefore, "no reasonable officer in his position would have believed that he could let the beating occur because he was, in the technical sense, 'receiving medical care.'" (*Id.*) The Court agrees with Plaintiff's assessment. Therefore, the second prong of the qualified immunity inquiry is met

Thus, in viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to show a plausible claim for failure to intervene against Sergeant Davis, and that Sergeant Davis is not entitled to qualified immunity at this time.

Accordingly, Defendants' Motion to Dismiss (ECF No. 15) is **DENIED** as to claims against Defendant Sergeant Davis.

With respect to Sergeant Swain, the Court will apply the same qualified immunity inquiry. Under the first prong of the analysis, the Court will ask whether the alleged facts show Sergeant Swain violated Plaintiff's right against excessive force by failing to intervene. Specifically, the Court will consider whether Swain (1) knew about the excessive force, (2) had the opportunity and means to prevent it, but (3) did not take action to prevent it. *Groth*, 761 F. Supp. 3d at 1053–54; *Essex*, 518 Fed.Appx. at 357.

Plaintiff alleges that the camera footage captured Swain in front of Room 213 while Plaintiff was being treated by Nurse Armstrong. (ECF No. 1 at PageID 5.) During this time, Wilkins and Underwood stood in the hallway talking with Swain and other officers. (*Id.*) Plaintiff alleges the conversation centered around Sergeant Davis's hand injury and "how Florez-Ramirez

18

ought to be punished." (*Id.* at PageID 6.)  According to the Pending Complaint, at 1:56 p.m., "Wilkins removed his wristwatch, handed it to Sergeant Swain, and went back into Room 213." (*Id.* at PageID 6.)  Plaintiff alleges that "Sergeant Swain knew Wilkins took off his wristwatch in anticipation of physically attacking Florez-Ramirez" and "did nothing to stop the attack from happening." (*Id.*)  Defendant argues this "lone factual allegation" is not enough to establish Swain knew about the excessive force.  (ECF No. 15-1 at PageID 107.)  Furthermore, Defendant points out, camera footage shows officers dispersing after Wilkins and Underwood reentered Room 213, indicating Swain "would not have been anywhere near Plaintiff's medical room at the time of the assault." (*Id.*)  However, Plaintiff's allegations that Swain heard Wilkins' and Underwoods' grievances, and that Wilkins gave her the wristwatch "in anticipation of physically attacking Florez-Ramirez" are sufficient to show a plausible claim that Swain knew or should have known that Wilkins and Underwood were about to use excessive force.

Defendants argue that Swain did not have a realistic opportunity to intervene since she left the scene during the alleged beating.  (ECF No. 15-1 at PageID 107.)  However, like Sergeant Davis, Sergeant Swain outranked Wilkins and Underwood and had both the opportunity and authority to order them to stand down before they went back into Room 213.  Therefore, since Plaintiff has alleged sufficient facts to show Swain knew or should have known about the excessive force, had the opportunity to prevent it, but did not take action to prevent it, the Court finds the first prong of the qualified immunity inquiry is met.  The second prong is also met for the reasons discussed above.

Thus, viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to show a plausible claim for failure to intervene against Sergeant Swain, and that Sergeant Swain is not entitled to qualified immunity at this time.

19

Accordingly, Defendants' Motion to Dismiss (ECF No. 15) is **DENIED** as to claims against Defendant Sergeant Swain.

Next, the Court will address the qualified immunity inquiry as applied to the Lieutenant. Under the first prong of the inquiry, the Court asks whether the alleged facts show the Lieutenant violated Plaintiff's right against excessive force by failing to intervene. Specifically, the Court asks whether the Lieutenant (1) knew about the excessive force, (2) had the opportunity and means to prevent it, but (3) did not take action to prevent it. *Groth*, 761 F. Supp. 3d at 1053–54; *Essex*, 518 F. App'x at 357.

According to Plaintiff, camera footage also reveals a lieutenant in the hallway with Wilkins and Underwood while Nurse Armstrong treated Plaintiff. (ECF No. 1 at PageID 5.) The Lieutenant was "distinguishable because his SCSCO uniform included a necktie." (*Id.*) Plaintiff alleges Underwood and the other officers were talking about Sergeant Davis's hand injury and "how Florez-Ramirez ought to be punished." (*Id.* at PageID 6.) According to the Pending Complaint, after Wilkins and Underwood returned to Room 213, the Lieutenant "directed everyone else to disperse" and "remained standing directly outside Room 213—arms crossed, looking up and down the now-empty hallway," as if to stand watch. (*Id.* at PageID 7.) Plaintiff argues the Lieutenant facilitated the "assault and battery" in this way, or "[a]t the very least . . . would have heard everything happening inside the Room 213." (*Id.*) These allegations sufficiently demonstrate the Lieutenant knew about the excessive force, had the opportunity to prevent it, yet did not take action to prevent it. Therefore, the first prong of the qualified immunity inquiry is met. The second prong is also met for the aforementioned reasons. Therefore, the Lieutenant would not be entitled to qualified immunity if he were properly identified and named.[9]

---

[9] Plaintiff claims the Lieutenant is likely one of three lieutenants present at the Shelby

Defendants do not dispute the presence of a lieutenant in the hallway but argue that Plaintiff has not made specific allegations against Defendants Jones, Williams, and Cleaves.  (ECF No. 15-1 at PageID 106.)  As Defendant points out, § 1983 claims must "specifically link the officer's involvement" to the constitutional violation.  (*Id.* at PageID 105 (citing *Przybysz v. City of Toledo*, 746 F. App'x 480, 483 (6th Cir. 2018).)  Thus, a plaintiff must show each defendant was "personally involved in the wrongful conduct" and "attribute specific factual allegations to particular defendants."  (*Id.* at PageID 105–06 (first quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014); and then quoting *Alghusain v. Nemeth*, 2021 U.S. Dist. LEXIS 168540, at *13 (N.D. Ohio Sep. 7, 2021).)  Defendant argues that because Plaintiff "lumps" the three lieutenants together, he has failed to state a claim against each of them and they are entitled to qualified immunity.  (*Id.* at PageID 106.)

On the contrary, Plaintiff argues the Pending Complaint "alleges specific, individual actions against each of the three corrections officers at once."  (ECF No. 21 at PageID 147).  Plaintiff cites to Federal Rule of Civil Procedure 8(d), which allows parties to plead inconsistent claims that district courts have construed "to cover inconsistent factual allegations" as well.  (*Id.* (citing *Truck and Auto Extras, LLC*, No. 5:19-CV-280-REW, 2020 WL 3578348, at *5 (E.D. Ky. Jul. 1, 2020).)  Plaintiff argues that since the lieutenant in the camera footage violated Plaintiff's constitutional rights, and "that individual might plausibly have been one of several persons," Rule 8(d) allows him to make inconsistent factual allegations against all three lieutenants until he can

_____

County Jail on May 20, 2023—Jacques Jones, Tracy Williams, or Carlus Cleaves.  (ECF No. 21 at PageID 133.)  Plaintiff obtained this information from the SCSO's internal investigation into the incident as part of the Shelby County DA's policy of sharing pertinent criminal case information with crime victims and civil attorneys representing them.  (*Id.* at PageID 129, n.4.)  According to the Pending Complaint, Plaintiff "does not anticipate substantively proceeding against all three SCSO lieutenants" but names them "to preserve [his] claims until [he can] establish the Lieutenant's identity."  (ECF No. 1 at PageID 2, n. 2.)

21

"rule out those mistakenly named." (*Id.*)  Defendants disagree, arguing Rule 8(d) allows pleading claims and factual allegations in the alternative but not *defendants* in the alternative.  (ECF No. 25 at PageID 156.)  Defendant argues the proper way to preserve a claim against an unknown party is to sue "John Doe" and later change the name.  (*Id.* (citing *Colson v. City of Alcoa*, 458 F. Supp. 3d 887, 918 (E.D. Tenn. 2020).)  However, as Plaintiff elucidates, the Sixth Circuit does not allow parties to change "John Doe" for a different name after the statute of limitations has passed, because this is considered a change of parties rather than a mistake of identity.  (ECF No. 21 at PageID 147–48 (citing *Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008).)

Both parties are correct.  Defendants are right that Plaintiff must make specific allegations against Defendants in order for his claims against them to proceed.  *Przybysz*, 746 Fed. App'x. at 483.  However, Plaintiff is right that, the statute of limitations having run, the Federal Rules of Civil Procedure do not allow him to preserve his claims against the Lieutenant by using a "John Doe" placeholder.  *Moore*, 267 F. App'x at 455.  Instead, Plaintiff relies on the U.S. Supreme Court's decision in *Twombly* that, at the pleading stage, he need only "state a claim to relief that is plausible on its face."  550 U.S. at 570.  This pleading standard enables plaintiffs who might not otherwise have access to evidence under a defendant's control to "raise a reasonable expectation that discovery will reveal evidence" supporting their claims.  *Id.* at 556.

Here, Plaintiff has raised a "reasonable expectation" that jail records may reveal which Defendant was the Lieutenant in the hallway during the alleged beating on May 20, 2023.  Although more than a year has passed since Plaintiff filed the Pending Complaint, discovery has been stayed while the Court considers whether Defendants are entitled to qualified immunity.  Having found they are not entitled to qualified immunity at this time, the Court finds it appropriate to allow Plaintiff to proceed with his claims against Defendants Jones, Williams, and Cleaves and

22

establish the Lieutenant's identity during discovery.  If, at the end of discovery, Plaintiff has not

discerned which Defendant is the Lieutenant, the Court will dismiss claims against all three.  If

Plaintiff discovers a different officer was the Lieutenant, the Court will dismiss claims against all

three, and Plaintiff will be barred from adding the new defendant since he or she did not receive

process within the time prescribed by local rules of civil procedure.[10]

Thus, taking both parties' arguments into consideration and viewing the allegations in the

light most favorable to Plaintiff, the Court finds Plaintiff has alleged sufficient facts to show a

plausible claim for failure to intervene against Defendants Jones, Williams, and Cleaves.

Therefore, they are not entitled to qualified immunity at this time.

Accordingly, Defendants' Motion to Dismiss (ECF No. 15) is **DENIED** as to claims against

Defendants Jones, Williams, and Cleaves.  The Court **DIRECTS** Plaintiff to identify which

Defendant is the unknown "Lieutenant" as soon as possible in the discovery phase, and then to file

a Rule 21 motion asking the Court to dismiss claims against Defendants who are not "the

Lieutenant."

Lastly, the Pending Complaint also asserts a failure to intervene claim against Nurse

Cunningham.  However, in the Response, Plaintiff states, "[f]or reasons beyond the scope of this

Response, Florez-Ramirez elects not to proceed against Nurse Cunningham at this time."  (ECF

No. 21 at PageID 131, n.6.)

Accordingly, Plaintiff's claims against Ashlyn Cunningham in the Pending Complaint

---

[10] In this case, sixty days from filing of the Pending Complaint and service order.  Local Rule 4.1(c); *see also* Fed. R. Civ. P. 15(c)(C) (allowing plaintiffs to change a party only if that party, within the time limit for service of process, "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.")

23

(ECF No. 1) are **DISMISSED WITHOUT PREJUDICE**.[11]

**III. GTLA Claims**

Defendants argue that Plaintiff's state-law claims cannot continue because GTLA does not remove governmental immunity for injuries arising from allegations of civil rights violations or governmental entities exercising discretionary functions. (ECF No. 15-1 at PageID 111 (citing Tenn. Code Ann. § 29-20-205).) Plaintiff concedes this point and chooses to "proceed solely under Section 1983." (ECF No. 21 at PageID 128.)

Accordingly, Defendants' Motion to Dismiss (ECF No. 15) is **GRANTED** as to claims under Tennessee's Governmental Tort Liability Act against Shelby County, Tennessee.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (ECF No. 15) is **DENIED** as to the federal claims because the Pending Complaint is not malicious, duplicative, or barred by claim-splitting, and individual Defendants are not entitled to qualified immunity at this time. Defendants' Motion is **GRANTED** as to the state-law claims which are precluded by the GTLA. Furthermore, the Court **DIRECTS** Plaintiff to identify which Defendant is the unknown "Lieutenant" as soon as possible in the discovery phase, and then to file a Rule 41 motion asking the Court to dismiss claims against Defendants who are not "the Lieutenant."

Finally, the Court **DISMISSES WITHOUT PREJUDICE** all claims in the Pending Complaint against Ashlyn Cunningham, RN.

**IT IS SO ORDERED**, this 31st day of March, 2026.

s/ Mark S. Norris
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE

---

[11] Since Ashlyn Cunningham has not responded to the Pending Complaint and was not represented in this Motion, there is no need to grant or deny the motion as to this claim.